**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BARRY NOTMEYER, | No. C 06-04096 SI |
| Plaintiff, | **ORDER DENYING DEFENDANTS' APPLICATION FOR CERTIFICATION FOR INTERLOCUTORY APPEAL AND STAY OF PROCEEDINGS** |
| v. | |
| STRYKER CORP., et al., | |
| Defendants. | |

On August 6, 2007, the Court issued an order denying defendants' motion for summary judgment. Defendants now move for certification of that Order for interlocutory appeal. In the alternative, defendants request a stay of all proceedings, pending the Supreme Court's resolution of *Reigel v. Medtronic, Inc.*, 127 S. Ct. 3000 (2007) (granting certiorari). Having considered the papers submitted by the parties, and for the following reasons, the Court DENIES defendants' requests.

**BACKGROUND**

On March 4, 2004, plaintiff Barry Notmeyer underwent total left hip arthroplasty. Plaintiff was implanted with a prosthetic hip replacement system called the Trident. On May 21, 2004, the Alumina C-Taper Head, which is part of the Trident system, shattered. Plaintiff subsequently filed suit for personal injuries and damages against the manufacturers of the Alumina C-Taper Head, defendants Stryker Corporation and Howmedica Osteonics Corporation.

The Alumina C-Taper Head component was first approved for use by the Food and Drug Administration ("FDA") in 1997 pursuant to the 510(k) process, by which the FDA determines that a device is suitable for marketing as substantially equivalent to another already-approved device. In 2000,

under the 510(k) process again, the FDA approved the particular size of the Alumina C-Taper Head component implanted in plaintiff. The FDA approved these components for use only with polyethylene inserts, which the Trident system does not use; instead the Trident system uses "Alumina" inserts.

In 1999, defendants submitted to the FDA a premarket approval ("PMA") application for the Trident hip replacement system, which included the Alumina C-Taper Head component. After three years of PMA review, the FDA approved the device. A day later, defendants submitted a PMA supplement to include additional Alumina C-Taper Head sizes, including the size used by plaintiff. The FDA approved the additional sizes via a special 30-day supplemental review process.

On August 6, 2007, the Court issued an order denying defendants' motion for summary judgment. Defendants argued that the FDA's PMA approval of the device at issue gave rise to preemption under section 360k of the Medical Device Amendments. The Court disagreed, based on Ninth Circuit authority. Defendants now seek interlocutory appeal on this issue.

## LEGAL STANDARD

The general rule is that an appellate court should not review a district court ruling until after entry of a final judgment. *Coopers & Lybrand v. Livesay*, 437 U.S. 463 (1978); *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1026 (9th Cir. 1982), *aff'd sub nom. Arizona v. Ash Grove Cement Co.*, 459 U.S. 1190 (1983); *Fukuda v. County of Los Angeles*, 630 F. Supp. 228, 229 (C.D. Cal. 1986); *see* 28 U.S.C. § 1291. The Interlocutory Appeals Act of 1958 creates an exception to the general rule and allows for the appeal of non-final orders upon consent of both the district court and the court of appeals. The statute states, in pertinent part:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he [or she] shall so state in writing in such order. The Court of Appeals . . . may thereupon . . . permit an appeal . . . if application is made to it within ten days.

28 U.S.C. § 1292(b). The party seeking certification of an interlocutory appeal has the burden to show the presence of those exceptional circumstances. *Coopers & Lybrand*, 437 U.S. at 474-75, 98 S. Ct. at 2461; *Fukuda*, 630 F. Supp. at 229.

2

Section 1292 identifies three factors that must be present in order for the Court to certify an appeal. First, the issue to be certified must involve a controlling issue of law. The Ninth Circuit has ruled that an issue is "controlling" if "resolution of the issue on appeal could materially affect the outcome of the litigation" in the district court. *In re Cement Antitrust Litig.*, 673 F.2d at 1026 (citing *United States Rubber Co. v. Wright*, 359 F.2d 784, 785 (9th Cir. 1966)); *see Shurance v. Planning Control Int'l, Inc.*, 839 F.2d 1347, 1347-48 (9th Cir. 1988).

Second, there must be a substantial ground for difference of opinion on that issue. A party's strong disagreement with the Court's ruling is not sufficient for there to be a "substantial ground for difference"; the proponent of an appeal must make some greater showing. *Kern-Tulare Water Dist. v. Bakersfield*, 634 F. Supp. 656, 667 (E.D. Cal. 1986), *aff'd in part and rev'd in part on other grounds*, 828 F.2d 514 (9th Cir. 1987).

Third, an interlocutory appeal must be likely to materially speed the termination of the litigation. If an interlocutory appeal would actually delay the conclusion of the litigation, the Court should not certify the appeal. *See Shurance*, 839 F.2d at 1348 (refusing to hear certified appeal where trial is scheduled to begin 5 months later).

**DISCUSSION**

Defendants have not met their burden of establishing the presence of exceptional circumstances justifying interlocutory appeal. First, it is not clear that the issue to be certified involves a "controlling" issue of law. Defendants seek review of the Court's conclusion that PMA approval does not give rise to preemption of state law design and manufacturing defect claims. In its Order, however, the Court indicated that even if PMA approval did create preemption, such preemption would not necessarily apply in the instant case. The Court explained:

> Though the Court need not do so in light of the foregoing, it is worth noting that the particular facts of the device approval process in this case cast further doubt on whether plaintiff's state law claims are preempted. In particular, it is not clear to the Court that the device at issue here received the benefit of the full FDA PMA approval process.
>
> Though the FDA approved the Alumina C-Taper Head component via the PMA process as part of the Trident, the FDA approved the particular size of the head component used by plaintiff via the special 30-day PMA supplemental process. *See*

3

> Cymbaluk Decl., Ex. B. As described above, the FDA approves changes to PMA-approved devices via the special 30-day PMA supplemental process only when the FDA determines that the change does not affect the safety or effectiveness of the device. Furthermore, in their application for PMA supplemental approval of additional Alumina C-Taper Head component sizes, defendants cited to the FDA the fact that the other head sizes had been previously approved by the FDA, apart from the Trident system, pursuant to the 510(k) process. *See* Parisian Decl. ¶ 57, Ex. D. Given these facts, it is not clear to the Court that the device at issue here can be considered to have gone through the full PMA process. Thus even if the PMA process were to create or constitute a device-specific federal requirement for MDA preemption purposes, the Court would not necessarily apply that preemption to the device at issue here.

August 6, 2007 Order at 9 n.3. Thus, an appellate ruling that the PMA process gives rise to preemption would not likely change the outcome of defendants' motion for summary judgment, or the case.

For similar reasons, interlocutory review is not likely to materially speed the termination of the litigation, and would more likely delay its conclusion. If the Ninth Circuit were to overturn this Court on the preemption issue, the Court would still have to conclusively determine if the device at issue here was PMA approved. If it was not, then the litigation will have been unnecessarily delayed. The third factor for allowing interlocutory appeal is therefore not met in this case, and the Court must DENY defendants' request for certification for interlocutory appeal.

Alternatively, defendants request that the Court stay all proceedings pending the Supreme Court's review of *Riegel v. Medtronic, Inc.*, 451 F.3d 104 (2d Cir. 2006). In *Reigel*, the Second Circuit ruled that the PMA process creates FDA requirements, giving rise to preemption. *See id.* at 118. The Supreme Court has now granted certiorari. *See* 127 S. Ct. at 3000. The Court DENIES defendants' request. Again, a definitive ruling, even by the Supreme Court, on the preemptive effect of PMA approval would not necessarily force this Court to reconsider the August 6, 2007 Order, because it is unclear in this case whether the device at issue can be treated as PMA approved.

For the foregoing reasons, the Court DENIES defendants' requests for certification for interlocutory appeal or for a stay. [Docket No. 74]

**IT IS SO ORDERED.**

Dated: September 10, 2007

SUSAN ILLSTON
United States District Judge

4